JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Dante Warner, appeals his conviction and sentence in the Cuyahoga County Court of Common Pleas for kidnapping, aggravated burglary, and rape. For the reasons stated herein, we affirm.
 {¶ 2} Warner was indicted on one count of kidnapping in violation of R.C. 2905.01 with a sexual motivation specification, one count of aggravated burglary in violation of R.C. 2911.11 with a sexual motivation specification, and one count of rape in violation of R.C.2907.02.
 {¶ 3} At trial, the victim testified that during the early morning of August 2, 2005, while she was sleeping, she felt something between her legs. Thinking she might have dreamt it, she tried to go back to sleep. However, she again felt herself getting touched between the legs and woke up. She saw that someone was crouching down beside her bed with one of her bath towels over his head. She backed up out of her bed and went to turn the light on. She was able to reach the light and turn it on; however, the intruder ran toward her, began to strangle her, and turned the light off. The victim was unable to get a good look at the intruder because she was being strangled and he had a towel covering his head. She did observe that he was taller than she and was "kind of skinny," but he was strong. She also observed that he was wearing pants and a sweater.
 {¶ 4} The two continued to struggle for a short time, and then the intruder pushed the victim to the floor, pulled down her underwear, and raped her. During the episode, the victim's face was toward the floor. At this time, the victim was not *Page 4 
able to tell if the perpetrator was wearing a condom. After raping the victim, the perpetrator ran out. The perpetrator did not say anything during the entire episode.
 {¶ 5} The victim put on some shorts and ran after him. She saw the perpetrator running out of her neighbor's driveway and then saw a gray Monte Carlo drive past "really fast." She recognized the car and believed it belonged to her ex-boyfriend, Antwane Williams. She called Williams from her cell phone and asked him where his car was and who had it. She then began to tell him she had just been raped. Williams placed the victim's call on hold to take another call. Not wanting to wait, the victim hung up the call and called the police. As she headed back inside, the victim saw a condom outside her front door. She assumed it was used during the rape and left it for the police.
 {¶ 6} After the police arrived, the victim was taken to the hospital, where a rape kit was performed. The nurse examiner testified that although there were no injuries to the victim's vaginal area, such injury is not always present in a rape situation. The victim did have an abrasion to the right of her neck and swelling to her forehead. Testimony at trial established that the victim was upset and crying following the incident.
 {¶ 7} The victim also spoke to the police and informed them what happened. The victim testified that the only other individual who had a key to her home was Williams. The two began dating in 2002, but Williams ended the romantic relationship in the spring of 2005. The two remained friends, and in the summer of *Page 5 
2005, the victim wanted to get back together with Williams. The victim stated that Williams and Warner were best friends.
 {¶ 8} The victim had known Warner since high school. She indicated that he had a lot of tattoos on his forearms. She stated that after she went home from the hospital, she had occasion to speak with Warner. She stated that Warner told her that he had borrowed Williams' car on the night of her rape. He indicated that he was approached at gunpoint by four people who accused Warner of being a drug dealer. He told the victim that they wanted him to take them to the drugs and that he brought them to her house because he knew there would not be any drugs there. He further told the victim that they parked on her street, Warner gave them the key to her house, and he pointed out her house to them. When they came out, they tossed the key back to Warner and took off. He also said that he was forced to strip naked. After hearing Warner's version of events, the victim felt she "didn't understand it."
 {¶ 9} Several officers testified regarding the follow-up investigation and collection of evidence. Officer Lynn Hampton of the Cleveland Police Department testified that Warner told him that on the night of the incident he was approached by "one or two males" who "displayed a weapon" and asked him for drugs and money. Officer Hampton stated that Warner further indicated that he led them to the victim's home and gave them the key, and that they went inside. *Page 6 
 {¶ 10} The day after the incident, the victim provided Detective James McPike with a statement with more information. Although the victim could not say for a fact who the perpetrator was because she could not see the person's face, she thought there was a possibility that it was Warner. She stated that she thought it could have been Warner because his presence felt familiar. More specifically, she felt the height and strength were familiar "because [Warner] is one of my friends and we've played around before."
 {¶ 11} Evidence submitted at trial established that the DNA profile on the exterior and interior of the condom found outside the victim's door was consistent with Warner's, and that the DNA profile from the towel was a mixture consistent with the victim's and Warner's DNA.
 {¶ 12} Following the jury trial, Warner was convicted of all charges and sentenced thereon. Warner has appealed and has raised two assignments of error for our review that provide as follows:
 {¶ 13} "I: The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that the appellant was guilty of kidnapping, aggravated burglary and rape."
 {¶ 14} "II: Appellant's convictions for kidnapping, aggravated burglary and rape were against the manifest weight of the evidence."
 {¶ 15} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable *Page 7 
to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"State v. Leonard, 104 Ohio St.3d 54, 67, 2004-Ohio-6235, quotingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 16} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, supra (internal quotes and citations omitted).
 {¶ 17} Warner points to various weaknesses in the state's case in order to establish that his conviction for kidnapping, aggravated burglary, and rape were supported by insufficient evidence. Warner questions the victim's inability to identify him as her attacker, despite the fact that she knew Warner well and had opportunities to view the attacker, both when the light was on and as her attacker was running away. A review of the record reflects that while the victim was being attacked, the attacker had a towel over his head and he did not say a word. Further, the victim did inform Detective McPike that Warner could have been the attacker and that his body size and physique were familiar to her. *Page 8 
 {¶ 18} Warner also questions the physical evidence in the case. Warner asserts that no fingerprints were linked to him. However, the lack of fingerprint evidence did not exclude or exculpate Warner. See State v.Chambers, Cuyahoga App. No. 87323, 2006-Ohio-5326; State v. Lott, Cuyahoga App. Nos. 79790, 79791, 79792, 2002-Ohio-2752 (recognizing that "the lack of fingerprints neither proves or disproves anything material").
 {¶ 19} Warner further suggests that the DNA evidence was insufficient to identify him as the attacker. Warner states that the DNA present on the condom was not from semen and that the victim's DNA was not found on the condom. Also, a second condom, found in a trash can, was not analyzed for DNA. Although the DNA profile from the towel was a mixture consistent with the victim's and Warner's DNA, the portion of the population that could not be excluded as possible contributors was 1 in 18,360 individuals, which was equated to 1 in every 100 people in Cuyahoga County. Warner also argues that he had been to the victim's apartment before and had taken a shower at her apartment on at least one occasion. We are unpersuaded by Warner's argument.
 {¶ 20} Our review of the record reflects that there was sufficient circumstantial evidence upon which to convict Warner of the charged offenses. The evidence at trial established that both the condom found outside the victim's door following the attack and the towel used to cover the attacker's face were both found to have a DNA profile consistent with Warner. Insofar as Warner claims he had taken a *Page 9 
shower at the victim's apartment on at least one occasion, the victim testified that it had been months since the last time Warner had been to her home.
 {¶ 21} In addition to the DNA evidence, the testimony established that Warner was in Williams' car, had the key to the victim's home, and was on the victim's street at the time of the incident. There were several accounts of what Warner claimed happened to him on the night of the incident, which put his credibility into question. The victim herself believed that Warner could have been the attacker, in that his build and physique were familiar to her.
 {¶ 22} The Ohio Supreme Court has `"long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" State v. McKnight, 107 Ohio St.3d 101, 112, 2005-Ohio-6046, quoting State v. Heinish (1990), 50 Ohio St.3d 231, 238. In this case, we find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
 {¶ 23} With respect to his manifest weight argument, Warner claims that the victim's testimony was questionable. He asserts that the victim did not scream for help even though someone lived above her. This alone, however, does not establish that the incident did not occur. Warner further claims that the victim may have fabricated the attack to gain sympathy from Williams. He again questions the *Page 10 
physical evidence in the case, as well as the victim's failure to identify Warner as her attacker.
 {¶ 24} Our review reflects that the victim provided consistent testimony regarding the incident, she was observed as being upset and crying, and she had an abrasion to the right of her neck and swelling to her forehead. Also, Warner admitted that he was on the victim's street, and even his version of events had an intruder going into the victim's home. The DNA evidence was consistent with Warner's profile, and the victim believed the attacker's physique was familiar.
 {¶ 25} Here again, we find that the state presented a considerable amount of circumstantial evidence to support Warner's conviction for kidnapping, aggravated burglary, and rape. After reviewing the evidence presented at trial, we conclude that Warner's conviction was not against the manifest weight of the evidence.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
 MARY EILEEN KILBANE, J., and ANN DYKE, J., CONCUR. *Page 1